STATE, APPELLEE-APPELLEE, *v.* JACKSON, APPELLANT-APPELLANT.

Ohio Appeals, Tenth District, Franklin County.

No. 6302.   Decided February 23, 1960.

*Mr. Russell Leach,* city attorney, and *Mr. Bernard T. Chupka,* city prosecutor, for appellee-appellee.
*Mr. W. S. Lyman, Sr.,* for appellant-appellant.

(McLAUGHLIN, J., of the Fifth District, sitting by designation in the Tenth District.)

BRYANT, P. J.   Theodore Roosevelt Jackson, appellant herein, defendant in the Columbus Municipal Court, was convicted in that court on charge of illegal possession of intoxicating liquor for sale and sentenced to 60 days imprisonment in the Columbus Workhouse.   He was fined five hundred dollars and costs.   After the overruling of a motion for a new trial, Jackson appealed to the Franklin County Common Pleas Court making the assignment of nine errors, all of which were overruled by the Common Pleas Court and the judgment of the Columbus Municipal Court was affirmed.   Jackson has appealed to this court assigning substantially the same errors as in the Common Pleas Court with the additional error of affirming the judgment and sentence of the municipal court.

At the outset of the trial in the municipal court, counsel for Jackson made a motion to suppress the evidence.   It appears that at 4:00 A. M., Sunday, January 4, 1959, four officers of the Columbus Police Department found forty-five pint-size bottles of whiskey in two partly filled containers or cases in the rooming house owned and occupied by Jackson, the rooming house being under his direct control.   The undisputed testimony in the record shows that the outside doors to the rooming house were locked but that there was, at the front entrance, a bell and a venetian blind.   It appears that the police had observed numbers of people entering the place, remaining a short time and leaving, and that there was enough of them to arouse their suspicions.   The place had been under observation for a period of several weeks and on occasions between, on January 4, 1959, and prior thereto, a search of persons leaving the boarding house after a very brief visit revealed that the person had in his possession an unopened pint bottle of intoxicating liquor.

At the time of the raid, the police entered the rooming house, while a door was opened to admit two other persons. Inside, the police obtained keys from an employee with which they began opening doors leading from the hall on the lower level of the building.   Jackson was present and as they were

about to enter the room where the forty-five pint bottles of intoxicating liquor were found, according to one witness, he attempted to divert their attention elsewhere. When the police found and seized the supply of liquor, Jackson admitted his guilt and according to one witness (Record, p. 49) stated, "Well, you got me clean." It was the concensus of the witnesses that Jackson was bitterly opposed to the use of marked money to obtain evidence in cases such as his but preferred a raid and seizure of the liquor illegally held.

Jackson was arrested, the liquor was confiscated and an affidavit duly sworn to, was filed against him on the day of the raid. It is not disputed that no search warrant had been obtained by the police at any time in connection with this raid.

On January 5, 1959, Jackson pleaded not guilty to the charge, and the case was continued four times until March 10, 1959, at which time a motion to quash the affidavit was filed on the ground that it failed to charge an offense. Previously on January 27, 1959, motions to quash and to dismiss were also filed.

On behalf of Jackson, the principal contentions were as follows: (1) the police entered the place without a search warrant and therefore obtained the forty-five pint bottles of intoxicating liquor illegally in view of which Jackson contended that the liquor should be returned to him and not used as evidence, and (2) the affidavit filed by and sworn to by one of the police officers failed to charge that the liquor was possessed for sale and therefore failed to charge an offense and should be dismissed.

At the time the sufficiency of the affidavit was challenged and before the court ruled upon it, counsel for the State asked permission to add the missing words and others sufficient to constitute a valid charge. Permission was granted by the court to make this change after which there was an adjournment for two weeks until March 24, 1959. In the meantime the affidavit was amended to conform to the objections made by Jackson, after which it was signed a second time by the same police officer and was sworn to a second time before a judge of the municipal court.

The matter came on for trial on March 24, 1959, before the

court sitting as judge and jury and Jackson was found guilty upon the testimony of the four police officers who took part in the raid. Jackson refused to take the stand and offered no evidence whatever on his behalf. After the announcement by the court of the finding of guilt and before imposing sentence, the court requested information as to the prior criminal record of Jackson. The record disclosed the dates and offenses of which Jackson had been convicted previously as follows: Twice for keeping disorderly house, in 1945 and 1954; three times for gambling, 1945, 1949 and 1950; five times for illegal possession of intoxicating liquor for sale, 1942, 1945 and again in 1945, 1953 and 1956. (Record, p. 59.)

Jackson contends that the failure to obtain a search warrant rendered illegal the seizure of forty-five pints of liquor and that his motion to suppress the evidence should have been sustained. Jackson chose not to take the stand with the result that he has elected not to challenge the truth of all the testimony of the four police officers. The trial court may have construed this as indicating that the principal purpose of the so-called rooming house was the illegal sale of intoxicating liquor by the bottle, but regardless of that fact, we are unable to find anywhere in the record where the first bottle was either offered or admitted into evidence. So far as we can learn from the record, counsel for the State identified the several cartons and bottles but did not offer them nor were they admitted. The record in this case at pp. 60 and 61 of the record contains the following:

"THE COURT: Did you offer all this whiskey in evidence or just these two bottles?

"MR. CLIFFORD: I don't believe I made the offer, your Honor. For the purpose of the record, I'd like to offer it at this time.

"MR. LYMAN: Well, you can't do that. You have rested the case.

"THE COURT: It's all over with now.

"MR. LYMAN: It's all over with now."

In as much as the liquor was never admitted in evidence, the defendant was not prejudiced thereby. It is of course well settled that even if there was irregularity in making the arrest,

not established here, it would not be a bar to subsequent prosecution for the offense. See *State* v. *Zdovc*, 106 Ohio App., 481 at pages 487 and authorities there cited including 15 American Jurisprudence 15, §317, which states the rule as follows:

"As a general rule, the mere fact that the arrest of an accused person is unlawful is of itself no bar to a prosecution on a subsequent indictment or information, by which the court acquires jurisdiction over the person of the defendant."

The only remaining question of substance in this case is whether or not the affidavit was valid. No where in the record in this case have we been able to find specific reference to the statute involved. We assume that the charge in this case was brought under the provisions of Section 4301.58 (B), Revised Code, which reads in part as follows:

"(B) No person, by himself or by his clerk, agent, or employee, who is not the holder of a B, C, D, E, F, G, or I permit issued by the department (liquor control), in force at the time, and authorizing the sale of beer, intoxicating liquor, or alcohol, * * * shall sell, keep, or possess beer, intoxicating liquor or alcohol, for sale to any persons * * *." (Words in parenthesis added.)

The penalty for violating this section is found in Section 4301.99 (F), Revised Code, which reads in part as follows:

"(F) Whoever violates division (A) or (B) of Section 4301.58 * * *, Revised Code, shall be fined not less than one hundred nor more than one thousand dollars or imprisoned not less than thirty days nor more than six months, or both."

It is claimed by the defense and admitted by the prosecution that the affidavit originally filed was defective in that it failed to allege possession for sale. The affidavit in its original form did allege there was illegal possession and it was contrary to statute. It apparently is conceded by the defendant that the amended form of the affidavit is sufficient to charge an offense but he asserts vigorously that the trial court lacked the authority to amend the affidavit. In this connection the prosecution relies on Section 2941.30, Revised Code, relative to amending indictmens, information or bills of particulars. Unfortunately, the charge brought here was neither an indictment or information but an affidavit which is not within the express

terms of this section. Nor is this situation covered by Section 2937.03, Revised Code, authorizing the amendment of "the warrant or information."

Section 2941.35, Revised Code, would appear to make of Section 2941.30, supra, Revised Code, as to amendments of indictments, etc. applicable to affidavits. The said Section 2941.35, Revised Code, provides as follows:

"Prosecutions for misdemeanors may be instituted by a prosecuting attorney by affidavit or *such other method as is provided by law in such courts as have original jurisdiction in misdemeanors. Laws as to form, sufficiency, amendments, objections, and exceptions to indictments and as to the service thereof apply to such affidavits and warrants issued thereon.*" (Emphasis added.)

The criminal jurisdiction of municipal courts is derived in part from the provisions of Section 1901.20, Revised Code, reading in part as follows:

"The municipal court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory and of any misdemeanor committed within the limits of its territory. In all such prosecutions and cases, the court shall proceed to a final determination thereof. * * *"

Section 1901.21, Revised Code, provides in part as follows:

"(A) In a criminal case or proceeding, the practice, procedure, and mode of bringing and conducting prosecutions for offenses, and the power of the court in relation thereto, are the same as those which are conferred upon police courts in municipal corporations. * * *"

Section 1903.06, Revised Code, deals with police courts and provides in part as follows:

"Police courts have jurisdiction of, and may hear, finally determine, and impose the prescribed penalty for any offense under any ordinance of the municipal corporation, and any misdemeanor committed within the limits of the municipal corporation, * * *."

Specific reference to the filing of affidavits charging an offense and the issuance of warrants under the seal of the court are specifically authorized in Section 1903.25, Revised Code, providing in part as follows:

"When an affidavit is filed with the clerk of the police court * * * charging any person with the commission of an offense, the clerk may issue a warrant under the seal of the court to arrest the accused * * *."

The municipal court also has all the powers of mayor's courts and those formerly conferred upon justices of the peace. Section 1905.06, Revised Code, specifically authorizes mayors to "try the case on the affidavit, in the same manner, and with the same effect, as such cases are tried in the court of common pleas on the indictment."

Thus it would appear that specific authority is given in the sections above referred to for the amendment of an affidavit to the same extent and under the same limitations as applied in the case of indictments and information in the common pleas court. However, in this case a careful examination of the affidavit and of the authorities relied upon by the defendant disclosed another answer to this question. As hereinabove indicated, immediately upon objection being raised by the defendant, counsel for the state, before a ruling by the court, asked permission to amend. What they did, however, was far more than a mere amendment. Sufficient words were added to the affidavit to constitute a good and sufficient charge of illegal possession of intoxicating liquor for sale after which the police officer, who originally signed the affidavit, signed the amended form thereof, was sworn to the amended form and the jurat was executed by the municipal judge. Thereupon, adjournment and continuance were ordered specifically to give defendant a chance to prepare his defense on the affidavit as amended.

The syllabus in the case of *City of Ironton* v. *Bundy*, 98 Ohio App., 416, reads as follows:

"In the trial of a criminal case, the court has no authority to allow the affidavit charging the offense to be amended without verification by the individual preferring the charge."

In the above case at page 417, Collier, J., after referring to the amendment to the affidavit says:

"* * * The amended affidavit was not verified."

Judge Collier refers to several other cases.

In *Diebler* v. *State*, 43 Ohio App., 350, the holding was similar to the *Bundy case, supra*. In the course of the opinion

584

in the *Diebler case, supra*, Montgomery, J., at page 351, after telling of the amendment of the affidavit, says:

"* * * The affidavit as changed was not again verified, * * *."

In the *City of Toledo* v. *Harris*, 56 Ohio App., 251, it is held in the first branch of the syllabus that the Toledo Municipal Court lacked the power to amend the misdemeanor affidavit, but Carpenter, J., at page 253, points out that if the affiant is sworn again after the changes are made, a new affidavit results. The opinion states in part that

"If it is changed and then reverified, these difficulties are obviated, but a new affidavit results, and if done during a trial, may require some changes in the procedure of the case."

See also *Snyder* v. *State, ex rel. McCoy*, 53 Ohio App., 370.

Hence it is that the steps taken in this case amounted to more than mere amendment of the affidavit.

We have carefully examined the other errors complained of including the allegations that the evidence was insufficient. In our opinion the evidence was clear, convincing, overwhelming and undenied by the defendant. This and the other errors assigned are not well taken and must be overruled.

Judgment affirmed.

DUFFY and MCLAUGHLIN, JJ., concur.